UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


In re:

JEROME DUNCAN, INC.,                                      Case No. 05-59728
                                                         Chapter 7
                           Debtor.                       Hon. Marci B. McIvor
_____/

FORD MOTOR CREDIT COMPANY,

                           Plaintiff,

v.                                                       Adv. Proc. 06-4661

RICHARD DUNCAN, GAIL DUNCAN and
SHASHI K. TEJPAUL,


                           Defendants.
_____/

<u>OPINION DENYING DEFENDANTS' MOTION TO DISMISS</u>

        On July 5, 2006, Defendants' moved to dismiss this case under Fed. R. Civ. P.

12(b)(1)(lack of subject matter jurisdiction), made applicable to bankruptcy cases by

Fed. R. Bankr. P. 7012(b).  For the reasons set forth below, this Court DENIES

Defendants' Motion to Dismiss on that grounds that, under 28 U.S.C. 1334(b), the

Complaint "arises under or in" the bankruptcy, and this Court has "related to"

jurisdiction over this matter.

## I.

## FACTUAL BACKGROUND

Jerome-Duncan, Inc. ("JDI" or "Debtor") was sole owner and operator of a Ford motor vehicle dealership situated at 8000 Ford Country Lane, Sterling Heights, Michigan.

Plaintiff, Ford Motor Credit Corporation ("FMCC") provided wholesale floor plan lines of credit to JDI, Sterling Motors, and Minority Enterprises (collectively, the "Dealers"). FMCC further provided a working capital loan to JDI and commercial real estate loans to Defendant Gail Duncan. The obligations owed by the Dealers and Gail Duncan to FMCC under the financing arrangements were cross-collateralized, cross-guaranteed and cross-defaulted, including but not limited to, as provided in a Cross-Default and Cross Collateralization Agreement dated September 22, 2003 (the "Cross-Default Agreement"), by and among JDI, Gail Duncan, Jerome Duncan Leasing, Inc., Sterling Motors, Minority Enterprises, Tejpaul, the Gail Duncan Trust, and FMCC. Specifically, Defendants Gail Duncan and Richard Duncan guaranteed repayment of all obligations owed by JDI to FMCC under the "Wholesale Line Agreement" and the "Capital Loan Security Agreement" (Capital Loan #100405).[1] Defendants Gail Duncan as Trustee and Tejpaul guaranteed all obligations owed by JDI to FMCC under a capital loan security agreement (Capital Loan #225362). Defendants Tejpaul, Gail Duncan, and Gail Duncan as Trustee guaranteed repayment of all obligations owed by

---

[1]Richard Duncan was granted a release of his obligations with respect to his guaranty of repayment of Capital Loan 100405 on July 18, 1997.

Sterling Motors and Minority Enterprises to FMCC under the "Wholesale Financing

Security Agreement" and the "Minority Enterprises Wholesale Line Agreement",

respectively. Gail Duncan assumed liability on a promissory note and mortgage

executed in conjunction with FMCC providing real estate financing for the real estate

utilized by JDI.        In June 2005, JDI (hereinafter referred to as the "Debtor") filed for

Chapter 11 bankruptcy. This action was subsequently converted to a Chapter 7

proceeding.

After the Debtor filed for bankruptcy protection, FMCC continued to provide it

with financing. Such financing was provided pursuant to the terms and conditions of a

Stipulated Order Approving Agreement between Debtor and Ford Motor Credit

Company to Obtain Secured and Superpriority Financing, Modifying the Automatic

Stay, and Granting Adequate Protection (the "Financing Order") entered by the

Bankruptcy Court on August 4, 2005.[2]  The original Stipulated Order filed with the Court

(Docket #103) is stipulated to by counsel for FMCC and counsel for Debtor.  The

Financing Order became a final order on October 18, 2005.[3]

---

[2]The duration of the Financing Order was extended on several occasions at the request of the Debtor in order to enable the Debtor to continue operation of the business until the closing on the sale of the assets of the business to Suburban Ford on February 6, 2006.

[3]On that date, Bankruptcy Judge Marci B. McIvor entered an Order Granting Stipulation Approving Agreement Between Debtor and Ford Motor Credit Company to Obtain Secured and Superpriority Financing, Modifying the Automatic Stay, and Granting Adequate Protection. This Order incorporated the terms of a Stipulation Approving Agreement between Debtor and FMCC to obtain Secured and Superpriority Financing, Modifying the Automatic Stay and Granting Adequate Protection.

The Financing Order contains the following relevant Recitals and Paragraphs:

Recital F in the Financing Order states that, as of July 14, 2005, the Debtor and affiliated entities were indebted to FMCC in the amount of $62,302,970.65, subject to regular reconciliation.

Recital G in the Financing Order includes an acknowledgment that Gail Duncan and Tejpaul had unconditionally guaranteed payment of the Debtor's liabilities to Ford Credit. Recital G states,

> G.  Debtor's president, Gail Duncan, Jerome Duncan Leasing, Inc. and Shashi K. Tejpaul, the husband of Gail Duncan, (collectively the "Guarantor"), have unconditionally guaranteed the payment of Debtor's Liabilities to the FMCC. FMCC contends that Richard Duncan, father of Gail Duncan, and a holder of issued and outstanding capital stock of the Debtor, is a guarantor of the Wholesale Line (the "Limited Guarantor").

Recital M in the Financing Order states that FMCC "is willing to enter into this Order to make secured and priority postpetition loans and other secured and priority post petition extensions of credit to Debtor, but only on the terms and subject to the conditions set forth" in the Financing Order.

Recital P in the Financing Order states that the Order is entered in a "core proceeding" within the meaning of 28 U.S.C. § 157 and that the bankruptcy court has jurisdiction over the proceedings "and the parties and the property affected hereby."

Paragraph 18 of the Financing Order states that the Debtor reaffirmed and confirmed all of the existing loan documentation between the various parties and incorporated them by reference. Paragraph 18 states,

> 18.  All the Loan Documents are hereby incorporated herein by

4

reference and are ratified, reaffirmed and confirmed by the Debtor and are deemed adopted in full by the Debtor and shall be construed and considered as agreements between the Debtor (to the extent a signatory thereto) and FMCC under this Order (except to the extent inconsistent herewith or modified hereby) including, but not limited to, all financial and reporting covenants contained therein, and this Order shall be sufficient and conclusive evidence of the lending arrangements between the Debtor and FMCC and of the Debtor's ratification, reaffirmation and confirmation of the Loan Documents. The terms of the Loan Documents shall govern Debtor's Liabilities except to the extent otherwise provided herein or modified hereby. The Loan Documents evidencing relating [sic] to the Wholesale Line are modified to evidence the postpetition financing, and all the provisions of such Loan Documents shall apply to, and govern, the postpetition financing.

Paragraph 20 of the Financing Order states that Defendants, as Guarantors,

waive all of their defenses to FMCC. Paragraph 20 states,

> 20. All defenses and claims of every kind and nature, whether existing by virtue of local, state, federal bankruptcy or non-bankruptcy law, by agreement or otherwise, against FMCC, its successors and assigns, and its officers, agents, servants, employees and attorneys, Debtor's Liabilities or the Collateral, as such defenses and claims may presently exist, are hereby forever waived, relinquished and released by Debtor and its estate, **Guarantor** and Limited Guarantor, including without limitation, any affirmative defense, counterclaim, setoff, deduction or recoupment, . . . (emphasis added)

(Note that in the Stipulated Order "Guarantor" is defined as "Debtor's president, Gail Duncan, Jerome Duncan Leasing, Inc. and Shashi K. Tejpaul, the husband of Gail Duncan.")

In Paragraph 24 of the Financing Order, Defendants Gail Duncan and Tejpaul

affirm their guaranty of all of the indebtedness owed to FMCC including, but not limited

to, the post-petition financing. Paragraph 24 of the Financing Order further provided

that nothing contained in the order would be deemed a waiver of any claims that FMCC

might have against Gail Duncan, Tejpaul or Richard Duncan. Paragraph 24 states,

> 24. By execution of this Order, which execution must occur within (5) five days of entry of this Order, Guarantor and Limited Guarantor hereby affirms their guaranty of all, or with respect to Limited Guarantor, a portion, of Debtor's Liabilities to the FMCC including, but not limited to the postpetition financing. Nothing contained herein shall be deemed to be a waiver of any claim or right FMCC may have against any third parties, including, without limitation, Guarantor and Limited Guarantor, which claims and rights are expressly reserved.

Additionally, on January 31, 2006, this Court entered an Order Approving Sale of Assets Free and Clear of Liens, Claims and Encumbrances and Granting Related Relief (the "Sale Order"). The Sale Order includes the following language:

> 16. This Court retains jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendment thereto . . . retaining jurisdiction to. . .(c) resolve any disputes arising under or related to the Asset Purchase Agreement. . .

The Defendant Gail Duncan, either in her capacity as principal of the Debtor or as Guarantor, did not challenge the entry of either the Financing Order or the Sale Order. Defendants Tejpaul and Richard Duncan did not challenge the entry of either the Financing Order or the Sale Order.

On May 15, 2006, FMCC filed this adversary proceeding against Richard Duncan, Gail Duncan and Tejpaul, Adv. Pro. No. 06-4661 (the "Guaranty Action"), and filed a First Amended Adversary Complaint on June 20, 2006. In the Guaranty Action, FMCC seeks recovery from Richard Duncan, Gail Duncan and Tejpaul as guarantors of the obligations of the Debtor to FMCC on numerous guarantees of debt owed by the Debtor to FMCC. FMCC is the largest secured creditor of the Debtor. After liquidation of the assets of the Debtor, and the application of the

6

proceeds of the sale to the FMCC debt, the Debtor remains indebted to FMCC for the

resulting deficiency in the amount of approximately $ 7,496,415, as of the date of the

filing the Complaint in this action

On July 5, 2006, Defendants Gail Duncan and Tejpaul filed a Motion to Dismiss

Plaintiff's case for lack of subject matter jurisdiction.  Richard Duncan answered the

Plaintiffs' Complaint but has not joined in this Motion to Dismiss.

II.

ANALYSIS

28 U.S.C. § 1334 grants jurisdiction to district courts in bankruptcy cases and

proceedings as follows:

> (a) Except as provided in subsection (b) of this section, the district court
> shall have original and exclusive jurisdiction of all cases under title 11.
>
> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction
> on a court or courts other than the district courts, the district courts shall
> have original but not exclusive jurisdiction of all civil proceedings
> arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334 (emphasis added).

Pursuant to 28 U.S.C. § 1334(b) the United States District Courts have original

jurisdiction over "all civil proceedings arising under title 11, or arising in or related to

cases under Title 11."  There is a distinction between a core proceeding and a non-

core

proceeding. A core proceeding encompasses matters which "arise under" or "arise in" a

bankruptcy case. *See, In re Winimo Realty Co.*, 270 B.R. 108, 119 (S.D.N.Y 2001). A

7

"related to" proceeding is a proceeding which is not a core proceeding but which, in the determination of the bankruptcy court is so "related to" the administration of the bankruptcy case that the court has jurisdiction to adjudicate the matter. A finding that a matter "arises under or in" or that a matter is "related to" a bankruptcy case is sufficient to confer jurisdiction.

A. The Guaranty Action "Arises Under or In" the JDI Bankruptcy Case.

"Claims that arise under the Bankruptcy Code or arise in a bankruptcy case are core matters; claims that relate to a bankruptcy case, but do not arise in a bankruptcy case or under the Bankruptcy Code are non-core." *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 606 (S.D. Tex. 1999) (internal quotations omitted). A proceeding is considered "core" only if it "invokes a substantive right created by federal bankruptcy law or one which could not exist outside of bankruptcy." *Sanders Confectionery Prod., Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 483 (6th Cir. 1992). A proceeding "arises under title 11" if it requires the bankruptcy judge to "determine the effect of a prior order of the bankruptcy court." *In re Franklin*, 802 F.2d 324, 326 (9th Cir. 1986). *See, also, In re Ames Dept. Stores, Inc.*, 317 B.R. 260 (Bankr. .S.D.N.Y. 2004).

1. Parties' Arguments

Plaintiff argues that the Guaranty Action is a core claim that "arises under or in" the bankruptcy case within the meaning of 28 U.S.C. § 1334, because the Guaranty

Action will require resolution and enforcement of an order entered in the bankruptcy case, pursuant to which the guarantors obligations were reaffirmed, and the amount of the indebtedness was admitted and acknowledged as due and owing by the Debtor and guarantors Gail Duncan and Tejpaul. The Plaintiff also argues that the bankruptcy court has an important interest in determining the effect and enforceability of its orders because secured lenders will only lend money if they are confident that the rights granted to it by the bankruptcy court will be enforced.

Defendants summarily dismiss any assertion that this action is core citing two cases which find that claims concerning enforceability of guarantees are non-core claims. *See, Halper v. Halper*, 164 F.3d 830, 836 (3rd Cir. 1999); *In re Kold Kist Brands, Inc.*, 158 B.R. 175 (C.D. Cal. 1993) (action to recover on guarantee of debtor's obligation is non-core).


### 2. Court's Findings

This action to recover on a guaranty does not "invoke[s] a substantive right created by federal bankruptcy law or one which could not exist outside of bankruptcy." *Sanders*, 973 F.2d at 483. Plaintiff's Complaint seeks to enforce guaranties signed by non-debtor parties prior to the filing of the bankruptcy. However, courts have held that causes of action which require the bankruptcy court to determine the applicability of, or to enforce an order entered by the bankruptcy court, are proceedings which "arise under or in title 11". *Franklin,* 802 F.2d at 326; *Ames Department Stores, Inc. v. Eden Center, Inc.*, 371 B.R. 260 (Bankr. S.D.N.Y. 2004). In the *Ames* case, Debtor sold a

9

leasehold interest to NWL Holdings and the bankruptcy court issued an Assignment

Order and Designation Rights Order delineating the term of the leasehold interest held

by NWL Holdings.  Eden Center, the lessor, issued a default notice to lessee NWL

Holdings.  After Eden Center served its Notice of Default, NWL filed an adversary

proceeding against Eden Center in bankruptcy court alleging that the asserted lease

violations were violative of the bankruptcy court orders.  Eden Center argued that the

bankruptcy court did not have subject matter jurisdiction because the outcome of the

controversy would not have any economic impact on the bankruptcy estate.  The Court

rejected Eden Center's argument stating:

> Eden Center premises its argument on the truism that at this juncture, with
> Ames having already effected its assignment, the outcome of this
> controversy will not have an economic or other effect on the Ames estate,
> as has traditionally been required in this Circuit and elsewhere, to invoke
> "related to" jurisdiction.  But Eden Center fails satisfactorily to recognize
> that subject matter jurisdiction here is not based on "related to"
> jurisdiction.  Rather, it exists by reason of "arising in" jurisdiction, by
> reason of the Court's earlier orders in this case (which, without dispute,
> were entered in connection with a core function), and the need to enforce
> them.  (Footnotes omitted).

*Ames,* 371 B.R. at 269.  Similarly, in the *Franklin* case, the Court found that it retained

jurisdiction to construe its own orders, stating,

> Congress' grant of jurisdiction under sections 1334 and 157 conferred
> upon bankruptcy courts that jurisdiction needed to implement effectively
> its function of administering the Bankruptcy Code.  *See First State Bank &
> Trust Co. v. Sand Springs State Bank,* 528 F.2d 350, 353 (10th Cir. 1976).
> Simply put, bankruptcy courts must retain jurisdiction to construe their
> own orders if they are to be capable of monitoring whether those orders
> are ultimately executed in the intended manner.  Requests for bankruptcy
> courts to construe their own orders must be considered to arise under title
> 11 if the policies underlying the Code are to be effectively implemented.

*Franklin*, 802 F.2d at 326. In addition, federal courts always retain jurisdiction for the purpose of determining the scope and effect of an order entered in a prior bankruptcy proceeding. *See, Public Service Co. of New Hampshire v. Richards (In re Public Service Co. of New Hampshire)*, 148 B.R. 702 (Bankr. D.N.H. 1992); *In re Fairchild Aircraft*, 184 B.R. 910 (Bankr. W.D. Tex. 1995).

This Court recognizes that the instant case is factually distinguishable from the cases cited above. Plaintiff's Complaint seeks to enforce and collect on guaranties made by non-Debtor parties. As a general rule, such a cause of action would not be considered to "arise under or in" a bankruptcy case. However, in this case, the Court finds "arising under or in" jurisdiction because both Plaintiff's right to collect on the guaranties, and Defendants' defenses to Plaintiff's claims, are inextricably linked to the provisions contained in the Orders entered by this Court. Plaintiff argues that it would have never extended financing to JDI after JDI filed for bankruptcy had Defendants not explicitly reaffirmed their obligations under the guarantees. Plaintiff further argues that the Financing Order entered on October 18, 2005 waives Defendants' defenses to the guaranties, except as to the amount owed. Defendants have argued at various proceedings before the Court that the Financing Order and the Sale Order are not binding as to them. As the Court most familiar with the bankruptcy, and the relationships of all the parties during the bankruptcy, this Court must retain jurisdiction at least until the threshold issue of the effect of the Orders entered by this Court is ruled upon.

There are also grounds for finding "related to" jurisdiction. "Related to"

11

jurisdiction requires a finding that the outcome of this litigation could have an impact on the estate being administered in bankruptcy. *Sanders*, 973 F.2d 474. First, Defendants are guarantors of obligations owed by the Debtor and, to the extent that Plaintiff recovers against the guarantors, it will reduce Plaintiff's claim against the assets of the bankruptcy estate.[4] Given the size of FMCC's secured claim, (approximately $7.4 million), it is likely that the vast majority of the chapter 7 estate will be paid to FMCC regardless of how much FMCC collects on the guarantees. However, "related to" jurisdiction is not limited to cases where the anticipated outcome will effect the distribution to creditors.

"Related to" jurisdiction also exists when the litigation may effect the administration of the chapter 7 estate. *In re Wernick*, 242 B.R. 194, 196 (Bankr. S.D. Fla. 1999); *Sanders*, 973 F.2d at 482. The JDI bankruptcy spawned multiple lawsuits, and potential lawsuits and litigation in multiple forums will have an impact on the administration of the estate. In this adversary proceeding, Plaintiff is suing Defendants to enforce and collect on a guaranties. This Court has also retained jurisdiction over Defendant Gail Duncan's adversary proceeding against FMCC (Adv. Pro. No. 06-4570) in which Gail Duncan alleges in part that FMCC fraudulently induced her into signing mortgages and loan agreements. As stated above, the Court has retained

---

[4]The Court rejects Defendants' argument that Plaintiff must exhaust its remedies against the Debtor prior to enforcing the guarantees. The various agreements and loan notes between Plaintiff and JDI all have very specific terms of performance. Once JDI defaulted on one agreement or note, the cross-default agreements allowed Plaintiff to find JDI in default on all of its obligations. JDI's failure to comply with the requirement of the Wholesale Line Agreement and the subsequent filing of the bankruptcy triggered Plaintiff's right to enforce the guaranties executed by Defendants.

12

jurisdiction because Orders entered by this Court may determine the outcome of both adversary proceedings. This litigation impacts the administration of the estate because the chapter 7 Trustee also has potential causes of action against Gail Duncan and Tejpaul arising out of their alleged fraudulent transfers of property of the Debtor. Given the limited resources of the Trustee and possibly the guarantors, it will benefit the administration of the estate to retain jurisdiction over all claims and potential claims of FMCC, the Trustee, and Defendants so that the litigation proceeds in a coordinated and cost-effective manner.

III.

CONCLUSION

For the reasons set forth above, this Court holds that it has both "core" and "related to" jurisdiction. Therefore, this Court DENIES Defendants' Motion to Dismiss for lack of subject matter jurisdiction under 28 U.S.C. § 1334(b).

.

**Signed on February 06, 2007**

                                      /s/ Marci B. McIvor
                              **Marci B. McIvor**
                              **United States Bankruptcy Judge**

13